## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | Bankruptcy No. 17-24818-GLT |
| MARTHA C. PEELOR : | Chapter 7 |
| *Debtor* : | |
| Natalie Lutz Cardiello, Trustee : | |
| Movant : | |
| v. : | |
| United States of America, Internal Revenue Service; Commonwealth of Pennsylvania, Department of Revenue; County of Allegheny; Municipality of Bethel Park; Bethel Park School District; Jordan Tax Service; and PNC Bank : | |
| Respondents : | |

### MOTION TO SELL REAL ESTATE FREE AND CLEAR
### OF THIRD PARTY INTERESTS, LIENS, CLAIMS, CHARGES AND/OR ENCUMBRANCES

AND NOW COMES Natalie Lutz Cardiello, Trustee, by and through her attorney, Natalie Lutz Cardiello, Esquire, and files this Motion to Sell Real Estate Free and Clear of Third Party Interests, Liens, Claims, Charges and/or Encumbrances, and respectfully represents as follows:

1. Debtor filed a voluntary Chapter 7 Petition on November 30, 2017.

2. Natalie Lutz Cardiello was duly appointed and qualified as Trustee and has been so serving.

3. Debtor is the owner of real property located at 103 Pickwick Drive, Bethel Park, PA 15102 (Deed Book Volume 9131, Page 123; Tax ID No: 0393-B-00215-0000-00) ("Real Property"). No person other than the Debtor has an ownership interest in the Real Property, and no exemption in the property has been claimed by the Debtor.

4. This Court has jurisdiction pursuant to 28 U.S.C. §1334, and this is a core proceeding within the meaning of 28 U.S.C. §157.

5. Respondent, United States of America, Internal Revenue Service ("Internal Revenue Service"), is a governmental entity. The Internal Revenue Service holds no known liens against the Real Property.

6. Respondent, Commonwealth of Pennsylvania, Department of Revenue ("Department of Revenue"), is a governmental entity. The Department of Revenue holds no known liens against the Real Property.

7. Respondent, County of Allegheny ("Allegheny County"), is a governmental entity. The County of Allegheny holds no known liens against the Real Property other than current and/or past due real estate taxes due with respect to the Real Property.

8. Respondent, Municipality of Bethel Park ("Bethel Park"), is a governmental entity. Bethel Park holds no known liens against the Real Property other than current and/or past due real estate taxes due with respect to the Real Property.

9. Respondent, Jordan Tax Service, is a tax collection agency. Jordan Tax Service holds no known liens against the Real Property other than as agent for the collection of current and/or past due real estate taxes due with respect to the Real Property.

10. Respondent, Bethel Park School District, is a governmental entity. Bethel Park School District holds no known liens against the Real Property other than current and/or past due real estate taxes due with respect to the Real Property.

11. Respondent, PNC Bank ("PNC"), is a commercial bank holding a first and second mortgage on the Real Property.

12. Based on a Commitment for Title Insurance provided to the Trustee, the liens and encumbrances against the Estate's interest in and to the said Real Property in the order of their priorities are as follows, to wit:

   (a)  Current and past due taxes due to Allegheny County, Bethel Park, Bethel Park School District and Jordan Tax Service (as agent).

   (b)  A mortgage in favor of PNC Bank dated March 20, 2013 and recorded on May 5, 2013 in the Office of the Recorder of Deeds of Allegheny County in Mortgage Book Volume 42351, Page 9, in the amount of $118,000.

   (c)  A mortgage in favor of PNC Bank dated September 12, 2014 and recorded on September 24, 2014 in the Office of the Recorder of Deeds of Allegheny County in Mortgage Book Volume 44350, Page 114, in the amount of $25,000.

13. The scheduling of a party herein as a lien holder and/or interest holder, including but not limited to being scheduled as the holder of a lien, statutory, judicial or consensual, is without prejudice to the rights of the Trustee/Estate, and/or any party in interest to challenge the validity, extent, and/or priority thereof, and/or to challenge the claim as to the debt, and/or the amount alleged due and owing thereon.

14. The Trustee has received a cash offer to purchase the Real Property from Ernest Robert Rossi and Karen S. Rossi Asset Protection Trust, 105 Longuevue Drive, Pittsburgh, PA 15228, for a sale price of $138,800. A copy of the Agreement of Sale is attached hereto as **Exhibit "A"**.

15. To the best of the Trustee's knowledge, information and belief, and based on the certification contained in the "AS IS, WHERE IS" Addendum to Agreement of Sale signed by the proposed purchasers, the proposed purchasers have no relationship with the Debtor.

16. The Trustee believes that the value of the Real Property is approximately $138,800, based upon the current real estate market and offers received by the Trustee.

17. This is a "short sale" as the amount of the mortgage(s) on the Real Property is higher than the market value of the Real Property.

18. The purchase price and other terms of the sale were negotiated with the assistance of BK Global, the employment of which was approved by this Honorable Court on April 18, 2018.

19. The sale is contingent upon PNC Bank approving the short sale, which approval has been granted.

20. PNC Bank has agreed to pay $6,505 to the Bankruptcy Estate in connection with the sale of the Real Property.

21. The Trustee believes and therefore avers that the best interests of this Estate and its creditors will be served by this Court, pursuant to 11 U.S.C. §363(b), authorizing the sale of said Real Property, free and clear of all third party interests, liens, claims, charges and/or encumbrances against the same, specifically including but not limited to all liens and/or encumbrances, including but not limited to those of all parties named as Respondents hereto, including but not limited to the statutory, mortgage, and/or judicial liens of the Respondents hereto as set forth above, excepting only those rights of way, easements and restrictions of record or as are apparent from an inspection of the Real Property.

22. The Real Property will be sold free and clear of all liens and/or encumbrances (judicial, statutory and consensual), security interests, claims, charges and interests, including ownership interests, all of which shall be divested from the Real Property, excepting only easements and rights of way, as well as restrictions, exceptions, reservations, and covenants of record and/or as an inspection of the Real Property would disclose.

23. The sale of the Real Property shall be a sale of the Real Property in "AS IS", "WHERE IS" condition, without representations or warranties of any kind whatsoever, and the participation of the purchaser in the sale process shall constitute an agreement and representation that the purchaser has inspected the Real Property, and is purchasing the same solely on the basis of such inspections, and not as the result of any representation of any kind whatsoever by the Estate/debtor, or its/his/her agents, except as otherwise set forth herein.

24. To assure that the sale is a sale for the market value of the Real Property, higher and/or better offers for said realty will be accepted at the time of hearing on the sale of said realty (said higher offers being made in increments of $500.00), pursuant to §363(b), and the sale to the maker of the highest and best offer should be approved, authorized and confirmed.

25. The Trustee believes and therefore avers that the aforesaid method of sale is fair and reasonable, and in the best interest of this Estate, and that a higher and better price would not be obtained through continued marketing of the Real Property.

26. In order to bid at the sale hearing, a prospective bidder must place a deposit of $4,000 in escrow with the Trustee and provide evidence of his or her ability to pay the balance of the purchase price at the time of closing, either in the form of a letter from a bank indicating that the proposed purchaser has the required funds on hand, a mortgage commitment letter, or similar documentation acceptable to the Trustee. Such deposit and documentation are due no later than three (3) business days prior to the day of the sale hearing. Closing shall occur on or before ten days from the date the Order of Sale becomes final,

TIME BEING OF THE ESSENCE, with all such payments to be via certified check, cashier's check, or such other forms of assured and guaranteed payment as may be acceptable to the Trustee's counsel. Possession shall be delivered at closing.

27. In the event of the failure of the purchaser to remit payment in full within the required time frame, (or such extensions, not to exceed 30 days as the Trustee, in her sole and exclusive discretion, may accord to the purchaser) the Trustee may, at her option, declare a default, retain the deposit for the benefit of the Estate, and resell the Real Property, in which case the purchaser shall be liable for any deficiency, unless such inability to close is the result of the inability of the Trustee/Estate to have complied with the terms of the sale confirmation Order. The Trustee is hereby authorized (but not required) to sell the Real Property to the next highest bidder, and so on, in order to liquidate the Real Property for the benefit of the Estate.

28. Title shall be conveyed by Trustee's Special Warranty Deed, and the Trustee is, pursuant to §363(b), specifically accorded the authority to convey the Real Property described above, together with related rights of way and easements, under and subject to the existing rights of way, restrictions and easements, if any, as appear of record or as may be apparent from an inspection of the Real Property.

29. The purchaser shall be deemed to have released any and all claims he/she/they may have against the Trustee/Estate, or any of them, or that he/she/they may hereafter acquire against them, or either of them, known and/or unknown, under federal and/or state law, for any environmental liability or claim, including but not limited to "CERCLA" or any similar statutes arising out of conditions in, on, or about the Real Property so purchased.

30. The Trustee has not given nor been given any consideration for her agreement hereto except as herein set forth.

31. The proceeds to the bankruptcy estate shall be used as follows, to wit:

(a) to pay the costs of sale, specifically including but not limited to advertising, printing, mailing and notice fees;

(b) to pay any other such costs as may be properly incurred, if any, customary closing expenses, including sales commissions, and other such items as provided for in the motion or to effect said sale, and any real estate taxes, penalties, interest and costs for prior years as remain unpaid, as well as such amounts (if any) as may be due and owing upon statutory liens for water and/or sewage charges assessed by municipal authorities providing such services to said Real Property;

(c) to pay the Trustee's fees and Trustee's counsel fees (which fees shall be reserved for but not paid out until such fees are approved by the Court for payment after motion duly filed seeking such approval and authorization for payment); and

(d) to pay lien holders, if any, in the order of their priority, to the extent that the claim(s) are not disputed, and to the extent, if any, that a claim is disputed, the funds shall be retained pending further Order of Court.

All remaining funds shall be held by the Trustee pending further Order of this Court.

WHEREFORE, the Trustee prays this Honorable Court enter an Order authorizing this sale on the terms and conditions stated herein, and grant such other and further relief as it deems just and proper.

Dated:  February 4, 2019             Respectfully submitted,

*/s/Natalie Lutz Cardiello*
Natalie Lutz Cardiello, Esquire
PA ID# 51296
107 Huron Drive
Carnegie, PA 15106
ncardiello@comcast.net
(412) 276-4043