DocuSign Envelope ID: A8D55AF4-47CE-4B65-8716-960BA6AA2280

# STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE

**ASR**

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR)

## PARTIES

| | |
|---|---|
| BUYER(S): Ernest Robert Rossi & Karen S Rossi Asset Protection Trust | SELLER(S): Natalie Cardiello BK Trustee |
| BUYER'S MAILING ADDRESS:<br>105 Longuevue Drive<br>Pittsburgh, PA 15228 | SELLER'S MAILING ADDRESS: |

## PROPERTY

ADDRESS (including postal city) 103 Pickwick Drive

ZIP 15102-1721

in the municipality of Bethel Park , County of Allegheny ,

in the School District of Bethel Park , in the Commonwealth of Pennsylvania.

Tax ID #(s): and/or

Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): 393-B-215

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Buyer is not represented by a broker)

| | |
|---|---|
| Broker (Company) Howard Hanna Real Estate Services | Licensee(s) (Name) Vera Purcell |
| Company License # RB049340C | State License # RS182819L |
| Company Address 701 Washington Road, Pittsburgh, PA 15228 | Direct Phone(s) (412) 916-4488 |
| | Cell Phone(s) (412) 916-4488 |
| Company Phone (412) 561-7400 | Email Howard Hanna Real Estate Services |
| Company Fax (412) 561-7580 | Licensee(s) is (check only one): |
| Broker is (check only one): | ☒ Buyer Agent (all company licensees represent Buyer) |
| ☒ Buyer Agent (Broker represents Buyer only) | ☐ Buyer Agent with Designated Agency (only Licensee(s) named above represent Buyer) |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Seller is not represented by a broker)

| | |
|---|---|
| Broker (Company) Remax Select | Licensee(s) (Name) Kevin Shaner |
| Company License # RB063030C | State License # RS228684 |
| Company Address | Direct Phone(s) |
| | Cell Phone(s) (412) 576-5689 |
| Company Phone (724) 933-6300 | Email yourhomesold@kevinshaner.com |
| Company Fax | Licensee(s) is (check only one): |
| Broker is (check only one): | ☒ Seller Agent (all company licensees represent Seller) |
| ☒ Seller Agent (Broker represents Seller only) | ☐ Seller Agent with Designated Agency (only Licensee(s) named above represent Seller) |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

Buyer Initials: ERRT KSRT  KSRT ERRT    ASR Page 1 of 13    Seller Initials:

🖋 Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2018
rev. 1/18; rel. 4/18

Howard Hanna West Penn, 119 Gamma Drive Pittsburgh PA 15238
Vera Purcell
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Phone: (412)967-9000    Fax:    103 Pickwick Dr

1  **I. By this Agreement**, dated September 10, 2018

2  Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.

3  2. **PURCHASE PRICE AND DEPOSITS (4-14)**

4  (A) Purchase Price $ **$130,100.00**

5  ( One Hundred Thirty Thousand, One Hundred

6  U.S. Dollars), to be paid by Buyer as follows:

7  1. Initial Deposit, within _____ days (5 if not specified) of Execution Date.

8  if not included with this Agreement:

9  2. Additional Deposit within _____ days of the Execution Date:

10  3.

$ _____ 4,000.00
$
$

11  Remaining balance will be paid at settlement.

12  (B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer
13  within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by per-
14  sonal check.

15  (C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: Howard
16  Hanna Real Estate Services ),
17  who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or ter-
18  mination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of
19  the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this
20  Agreement.

21  3. **SELLER ASSIST (If Applicable) (1-10)**

22  Seller will pay $ _____ or _____ % of Purchase Price (0 if not specified) toward
23  Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is
24  approved by mortgage lender.

25  4. **SETTLEMENT AND POSSESSION (4-14)**

26  (A) Settlement Date is **on or before 45 days from short sale approval** , or before if Buyer and Seller agree.
27  (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless
28  Buyer and Seller agree otherwise.

29  (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable:
30  current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer
31  fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay
32  up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here:

33

34  (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
35  1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
36  2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31.
37  School tax bills for all other school districts are for the period from July 1 to June 30.

38  (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____

39

40  (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____

41

42  (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures
43  broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property
44  is subject to a lease.

45  (H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and
46  assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller
47  will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will
48  acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
49  ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.

50  5. **DATES/TIME IS OF THE ESSENCE (1-10)**

51  (A) Written acceptance of all parties will be on or before: **on or before 9/12/2018**
52  (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the
53  essence and are binding.
54  (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by sign-
55  ing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding
56  the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be ini-
57  tialed and dated.
58  (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agree-
59  ment of the parties.
60  (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms
61  and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable
62  to all parties, except where restricted by law.

63  Buyer Initials: ERRT ESRT KSRT ERRT

ASR Page 2 of 13

Seller Initials:

64  **6. ZONING (4-14)**
65  Failure of this Agreement to contain the zoning classification (except in cases where the property {and each parcel thereof, if subdi-
66  vidable} is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if
67  voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
68  Zoning Classification, as set forth in the local zoning ordinance: <u>Residential</u>

69  **7. FIXTURES AND PERSONAL PROPERTY (9-16)**
70  (A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens,
71  and other items including plumbing; heating; gas fireplace logs; radiator covers; lighting fixtures (including chandeliers and ceil-
72  ing fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars);
73  garage door openers and transmitters; television antennas; mounting brackets and hardware for television and sound equipment;
74  unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences;
75  mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware
76  (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments); built-in air conditioners;
77  built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking fuels stored on the
78  Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems.
79  Unless stated otherwise, the following items are included in the sale, but not in the Purchase Price: _____
80  _____
81  _____
82  (B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment
83  systems, propane tanks, satellite dishes and security systems): _____
84  (C) EXCLUDED fixtures and items: _____
85  _____

86  **8. MORTGAGE CONTINGENCY (9-16)**
87  ☒ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties
88  may include an appraisal contingency.
89  ☐ ELECTED.
90  (A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $ | Loan Amount $ |
| Minimum Term _____ years | Minimum Term _____ years |
| Type of mortgage | Type of mortgage |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % |
| Mortgage lender <u>Howard Hanna Mortgage Services</u> | Mortgage lender _____ |
| Interest rate _____ %; however, Buyer agrees to accept the Interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _____ %. Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (exclud-ing any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. | Interest rate _____ %; however, Buyer agrees to accept the Interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _____ %. Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (exclud-ing any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. |

106  (B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage applica-
107  tion(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case
108  no later than _____.
109      1. If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mort-
110      gage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right
111      to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's
112      mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to
113      make a good faith effort to obtain mortgage financing.
114      2. Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demon-
115      strating lender's conditional or outright approval of Buyer's mortgage application(s):
116          a. Does not satisfy the terms of Paragraph 8(A), OR
117          b. Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be
118          received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in writ-
119          ing by the mortgage lender(s) within _____ 7 DAYS after the date indicated in Paragraph 8(B), or any extension thereof, other
120          than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employ-
121          ment).
122      3. If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement,
123      all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer
124      will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this
125      Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee
126      for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation;
127      (3) Appraisal fees and charges paid in advance to mortgage lender(s).

128  Buyer Initials: [ERRT] [ESRT] KSRT ERRT        ASR Page 3 of 13        Seller Initials: _____

129 (C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular
130 LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a specific
131 level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The
132 appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher
133 or lower than the Purchase Price and/or market price of the property.

134 (D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee
135 the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s),
136 Buyer will do so at least _____ 15 _____ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted
137 by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage
138 lender(s) to make the above mortgage term(s) available to Buyer.

139 (E) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage appli-
140 cation (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s)
141 identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any,
142 otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process.
143 Broker for Seller. if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan
144 application.

145 (F) Buyer will be in default of this Agreement if Buyer furnishes false information to anyone concerning Buyer's financial and/or
146 employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and
147 ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to
148 reject, or refuse to approve or issue, a mortgage loan commitment.

149 (G) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires
150 repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within _____ 5 _____
151 DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's
152 expense.
153 1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and
154 agrees to the RELEASE in Paragraph 28 of this Agreement.
155 2. If Seller will not make the required repairs, or if Seller fails to respond within the stated time, Buyer will, within _____ 5 . _____
156 DAYS, notify Seller of Buyer's choice to:
157 a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will
158 not be unreasonably withheld, OR
159 b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
160 Paragraph 26 of this Agreement.
161 If Buyer fails to respond within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice to
162 Seller within that time, Buyer will accept the Property, make the required repairs/improvements at Buyer's expense and agree
163 to the RELEASE in Paragraph 28 of this Agreement.

164 **FHA/VA, IF APPLICABLE**
165 (H) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the pur-
166 chase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer
167 has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner,
168 Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than
169 $ _____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of
170 proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation
171 is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does
172 not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the
173 Property are acceptable.
174 Warning: Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing
175 Administration Transactions, provides, "Whoever for the purpose of . . . influencing in any way the action of such Department,
176 makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not
177 more than two years, or both."
178 (I) U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement
179 ☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of
180 getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that
181 FHA will not perform a home inspection nor guarantee the price or condition of the Property.
182 (J) Certification We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for
183 purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in
184 connection with this transaction is attached to this Agreement.

185 **9. CHANGE IN BUYER'S FINANCIAL STATUS (4-14)**
186 In the event of a change in Buyer's financial status affecting Buyer's ability to purchase, Buyer shall promptly notify Seller and
187 lender(s) to whom the Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not lim-
188 ited to, loss or a change in employment; failure or loss of sale of Buyer's home; Buyer's having incurred a new financial obligation;
189 entry of a judgment against Buyer. Buyer understands that applying for and/or incurring an additional financial obligation may
190 affect Buyer's ability to purchase.



191 Buyer Initials: ERT  LSRT  KSRT  ERRT          ASR Page 4 of 13          Seller Initials:

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          103 Pickwick Dr

192 **10. SELLER REPRESENTATIONS (4-14)**
193 (A) **Status of Water**
194     Seller represents that the Property is served by:
195     ☒ Public Water   ☐ Community Water   ☐ On-site Water   ☐ None   ☐ _____
196 (B) **Status of Sewer**
197     1. Seller represents that the Property is served by:
198         ☒ Public Sewer        ☐ Community Sewage Disposal System   ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
199         ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)      ☐ Holding Tank (see Sewage Notice 3)
200         ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
201         ☐ None (see Sewage Notice 1)   ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
202         ☐
203     2. **Notices Pursuant to the Pennsylvania Sewage Facilities Act**
204         **Notice 1: There is no currently existing community sewage system available for the subject property. Section 7 of the**
205         **Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter,**
206         **repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a**
207         **permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with**
208         **administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The**
209         **local agency charged with administering the Act will be the municipality where the Property is located or that municipality**
210         **working cooperatively with others.**
211         **Notice 2: This Property is serviced by an individual sewage system installed under the ten-acre permit exemption provisions**
212         **of Section 7 of the Pennsylvania Sewage Facilities Act. (Section 7 provides that a permit may not be required before installing,**
213         **constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre**
214         **parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted**
215         **and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a malfunction**
216         **may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.**
217         **Notice 3: This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a water**
218         **carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site.**
219         **Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank**
220         **from the date of its installation or December 14, 1995, whichever is later.**
221         **Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the dis-**
222         **tance specified by regulation. The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances**
223         **provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water**
224         **supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the hori-**
225         **zontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the**
226         **absorption area shall be 100 feet.**
227         **Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations. Sewage facilities**
228         **are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality com-**
229         **pletes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.**
230 (C) **Historic Preservation**
231     Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____
232
233 (D) **Land Use Restrictions**
234     1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the
235         following Act(s) (see Notices Regarding Land Use Restrictions below):
236         ☐ Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. § 901 et seq.)
237         ☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
238         ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
239         ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
240         ☐ Other
241     2. **Notices Regarding Land Use Restrictions**
242         a. **Pennsylvania Right-To-Farm Act:** The property you are buying maybe located in an area where agricultural operations
243         take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits
244         circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.
245         b. **Clean and Green Program:** Properties enrolled in the Clean and Green Program receive preferential property tax assess-
246         ment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution
247         of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that
248         may result in the future as a result of any change in use of the Property or the land from which it is being separated.
249         c. **Open Space Act:** This Act enables counties to enter into covenants with owners of land designated as farm, forest, water
250         supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open
251         space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that
252         the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific
253         termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply
254         from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the
255         Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.

256 Buyer Initials: ERRT   LSRT   KSRT   EJRT     ASR Page 5 of 13           Seller Initials: _____

d. **Conservation Reserve (Enhancement) Program:** Properties enrolled in the Conservation Reserve Program or CREP are environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer has been advised of the need to determine the restrictions on development of the Property and the term of any contract now in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

(E) **Real Estate Seller Disclosure Law**

Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale of condominium and cooperative interests.

(F) **Public and/or Private Assessments**

1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: ______
2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: ______

(G) **Highway Occupancy Permit**

Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

**11. WAIVER OF CONTINGENCIES (9-05)**

If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, **Buyer's failure to exercise any of Buyer's options within the times set forth in this agreement is a Waiver of that contingency and Buyer accepts the Property and agrees to the release in Paragraph 28 of this agreement.**

**12. BUYER'S DUE DILIGENCE/INSPECTIONS (9-16)**

(A) **Rights and Responsibilities**

1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to surveyors, municipal officials, appraisers and inspectors. All parties and their real estate licensee(s) may attend any inspections.
2. Buyer may make two pre-settlement walk-through inspections of the Property. Buyer's right to these inspections is not waived by any other provision of this Agreement.
3. **Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.**
4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.
5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared. Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.

(B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D) for Notices Regarding Property and Environmental Inspections)

(C) For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections, obtain any Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit a written corrective proposal to Seller, according to the terms of Paragraph 13(B).

**Home/Property Inspections and Environmental Hazards (mold, etc.)**

Elected ______ Buyer may conduct an inspection of the Property's structural components: roof; exterior windows and exterior doors; exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances; electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetration; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environmental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer may select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the home inspection must be performed by a full member in good standing of a national home inspection association, or a person supervised by a full member of a national home inspection association, in accordance with the ethical standards and code of conduct or practice of that association, or by a properly licensed or registered engineer or architect. (See Notices Regarding Property & Environmental Inspections) Waived: ERRT ESRT KSRT ERRT

**Wood Infestation**

Elected ______ Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mortgage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection reveals Waived: ERRT ESRT KSRT ERRT

322 active infestation(s). Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesticide appli-
323 cator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer may obtain
324 a written Report from a professional contractor, home inspector or structural engineer that is limited to structural
325 damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property.
326 **Deeds, Restrictions and Zoning**
327 **Elected** Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi-
328 nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the
329 Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking) is
330 permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: _____
331
332 **Water Service**
333 **Elected** Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise
334 qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will
335 locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous
336 condition, at Seller's expense, prior to settlement.
337 **Radon**
338 **Elected** Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection Agency
339 (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02 working levels
340 or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground by the normal decay
341 of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can increase the risk of
342 lung cancer. Radon can find its way into any air-space and can permeate a structure. If a house has a radon problem,
343 it usually can be cured by increased ventilation and/or by preventing radon entry. Any person who tests, mitigates
344 or safeguards a building for radon in Pennsylvania must be certified by the Department of Environmental Protection.
345 Information about radon and about certified testing or mitigation firms is available through Department of
346 Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State Office Building, P.O.
347 Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov
348 **On-lot Sewage (If Applicable)**
349 **Elected** Buyer may obtain an Inspection of the individual on-lot sewage disposal system from a qualified, professional
350 inspector. If and as required by the inspection company, Seller, at Seller's expense, will locate, provide access to, and
351 empty the individual on-lot sewage disposal system. Seller will restore the Property to its previous condition, at
352 Seller's expense, prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot
353 Sewage Inspection Contingency.
354 **Property and Flood Insurance**
355 **Elected** Buyer may determine the insurability of the Property by making application for property and casualty insurance for
356 the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate with the
357 insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone, Buyer may
358 be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more prior to
359 Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood insurance
360 premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood insur-
361 ance agents regarding the need for flood insurance and possible premium increases.
362 **Property Boundaries**
363 **Elected** Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal
364 description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property sur-
365 veyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural or
366 constructed barriers may or may not represent the true boundary lines of the Property. Any numerical representations
367 of size of property are approximations only and may be inaccurate.
368 **Lead-Based Paint Hazards (For Properties built prior to 1978 only)**
369 **Elected** Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct a
370 risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint haz-
371 ards. Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard
372 Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved
373 lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a sep-
374 arate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and any
375 lead-based paint records regarding the Property.
376 **Other**
377 **Elected** Sewer line camera scope                                                          Waived
378
379
380 The Inspections elected above do not apply to the following existing conditions and/or items: _____
381
382
383 **(D) Notices Regarding Property & Environmental Inspections**
384 1. **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating
385 the surface of a structure where it may cause mold and damage to the building's frame.

386 Buyer Initials: _____   ASR Page 7 of 13                          Seller Initials: _____

387    2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.

388    3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal
389    of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's responsi-
390    bility to dispose of them properly.

391    4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer to
392    investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop the
393    property would be affected or denied because of its location in a wetlands area.

394    5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores,
395    pollen and viruses) have been associated with allergic responses.

396    6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be
397    directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C.
398    20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health,
399    Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health
400    and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by
401    calling 1-877-724-3258.

402 **13. INSPECTION CONTINGENCY (4-14)**

403    (A) The Contingency Period is _____ 15 _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected
404    in Paragraph 12(C).

405    (B) Except as stated in Paragraph 13(C), if the result of any Inspection elected in Paragraph 12(C) is unsatisfactory to Buyer, Buyer
406    will, within the stated Contingency Period:

407      1. Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement, OR
408      2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
409      Paragraph 26 of this Agreement, OR

410      3. Present the Report(s) to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by Buyer.
411      The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the cor-
412      rections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the corrections.
413      Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or governmental require-
414      ments if performed in a workmanlike manner according to the terms of Buyer's Proposal.

415        a. Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation
416        Period.

417          (1) During the Negotiation Period, Seller will either agree to satisfy all the terms of Buyer's Proposal or negotiate, by written
418          or verbal communication, another mutually acceptable written agreement, providing for any repairs or improvements to
419          the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.

420          (2) If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable
421          written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the
422          Negotiation Period ends.

423        b. If no mutually acceptable written agreement is reached, or if Seller fails to respond, during the Negotiation Period, within
424        _____ days (2 if not specified) following the end of the Negotiation Period, Buyer will:

425          (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this
426          Agreement, OR

427          (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
428          of Paragraph 26 of this Agreement.

429        If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this
430        Agreement by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property
431        and agree to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the
432        Negotiation Period.

433    (C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____
434    days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the
435    name of the company to perform the expansion or replacement: provisions for payment, including retests; and a projected comple-
436    tion date for corrective meas ures. Within _____ 5 _____ DAYS of receiving Seller's Proposal, or if no Proposal is provided within the
437    stated time, Buyer will notify Seller in writing of Buyer's choice to:

438      1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
439      2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
440      Paragraph 26 of this Agreement, OR

441      3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by any mort-
442      gage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required by the
443      mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property given by Seller,
444      which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the defects, Buyer
445      may, within _____ 5 _____ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned
446      to Buyer according to the terms of Paragraph 26 of this Agreement.

447      If Buyer fails to respond within the time stated in Paragraph 13(C) or fails to terminate this Agreement by written notice to
448      Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.

449 **14. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)**

450    In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a prop-

451 Buyer Initials: ERRT bSRT *KSRT* *EQRT*     ASR Page 8 of 13    Seller Initials: _____

452 erty at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for the
453 property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of the
454 property and result in a change in property tax.
455 **15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (4-14)**
456 (A) In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are
457 received after Seller has signed this Agreement and before settlement, Seller will within _____ 5 _____ DAYS of receiving the notices and/or
458 assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:
459 1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the
460 notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
461 2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or fails
462 within the stated time to notify Buyer whether Seller will comply, Buyer will notify Seller in writing within _____ 5 _____ DAYS
463 that Buyer will:
464 a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in
465 Paragraph 28 of this Agreement, OR
466 b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
467 Paragraph 26 of this Agreement.
468 If Buyer fails to respond within the time stated in Paragraph 15(A)(2) or fails to terminate this Agreement by written notice to
469 Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.
470 (B) If required by law, within _____ 30 _____ DAYS from the Execution Date of this Agreement, but in no case later than _____ 15 _____ DAYS prior to
471 Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice
472 of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of the
473 Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to Seller.
474 1. Within _____ 5 _____ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a copy
475 of the notice to Buyer and notify Buyer in writing that Seller will:
476 a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/improve-
477 ments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
478 b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will
479 notify Seller in writing within _____ 5 _____ DAYS that Buyer will:
480 (1) Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which
481 will not be unreasonably withheld, OR
482 (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
483 of Paragraph 26 of this Agreement.
484 If Buyer fails to respond within the time stated in Paragraph 15(B)(1)(b) or fails to terminate this Agreement by written
485 notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this
486 Agreement, and Buyer accepts the responsibility to perform the repairs/improvements according to the terms of the
487 notice provided by the municipality.
488 2. If Seller denies Buyer permission to make the required repairs/improvements, or does not provide Buyer access before
489 Settlement Date to make the required repairs/improvements, Buyer may, within _____ 5 _____ DAYS, terminate this Agreement by writ-
490 ten notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
491 3. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph, Seller
492 will perform all repairs/improvements as required by the notice at Seller's expense. Paragraph 15(B)(3) will survive settlement.
493 **16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)**
494 (A) Property is NOT a Condominium or part of a Planned Community unless checked below.
495 ☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407 of
496 the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of the
497 condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.
498 ☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by
499 the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the declaration
500 (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the provisions
501 set forth in Section 5407(a) of the Act.
502 (B) **THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A**
503 **PLANNED COMMUNITY:**
504 If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant),
505 Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void
506 this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public
507 Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this
508 Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
509 (C) **THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED**
510 **COMMUNITY:**
511 1. Within _____ 15 _____ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association
512 a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides
513 that the association is required to provide these documents within 10 days of Seller's request.

515 2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer
516 for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the
517 association in the Certificate.
518 3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents and for
519 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon Buyer declaring this
520 Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
521 4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will
522 reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the
523 Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for
524 cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3)
525 Appraisal fees and charges paid in advance to mortgage lender.
526 **17. TITLES, SURVEYS AND COSTS (4-14)**
527 (A) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular
528 rates, free and clear of all liens, encumbrances, and easements, excepting however the following: existing deed restrictions; his-
529 toric preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the
530 ground; easements of record; and privileges or rights of public service companies, if any.
531 (B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from
532 a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies
533 come in standard and enhanced versions; Buyer should consult with a title insurance agent about Buyer's options. Buyer
534 agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an owner's
535 title insurance policy.
536 (C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation;
537 (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation: (3) Appraisal fees
538 and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.
539 (D) Seller has the right, upon request, to receive a free copy of any title abstract for the Property from the party for whom it was prepared.
540 (E) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal descrip-
541 tion of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or
542 required by the mortgage lender will be obtained and paid for by Buyer.
543 (F) In the event of a change in Seller's financial status affecting Seller's ability to convey title to the Property on or before the
544 Settlement Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but
545 is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against
546 Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient
547 to satisfy all liens and encumbrances against the Property.
548 (G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as
549 specified in Paragraph 17(A), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to
550 Buyer according to the terms of Paragraph 26 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs incurred
551 by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified in
552 Paragraph 17(C) items (1), (2), (3) and in Paragraph 17(E).
553 (H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation
554 about the status of those rights unless indicated elsewhere in this Agreement.
555 ☐ Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.
556 (I) **COAL NOTICE (Where Applicable)**
557 THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH
558 THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL
559 RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE,
560 BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July
561 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from
562 coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private
563 contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with
564 the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees
565 to sign the deed from Seller which deed will contain the aforesaid provision.
566 (J) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here:
567
568 (K) 1. This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____
569 ☐ Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.
570 2. Notices Regarding PrivateTransfer Fees: In Pennsylvania, Private Transfer Fees are defined and regulated in the Private Transfer Fee
571 Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that is payable upon the trans-
572 fer of an interest in real property, or payable for the right to make or accept the transfer, if the obligation to pay the fee or charge runs
573 with title to the property or otherwise binds subsequent owners of property, regardless of whether the fee or charge is a fixed amount or
574 is determined as a percentage of the value of the property, the purchase price or other consideration given for the transfer." A Private
575 Transfer Fee must be properly recorded to be binding, and sellers must disclose the existence of the fees to prospective buyers. Where
576 a Private Transfer Fee is not properly recorded or disclosed, the Act gives certain rights and protections to buyers.
577 **18. MAINTENANCE AND RISK OF LOSS (1-14)**
578 (A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property)
579 specifically listed in this Agreement in its present condition, normal wear and tear excepted.

580 Buyer Initials: ERT  LSRT KSRT IRRT   ASR Page 10 of 13   Seller Initials:

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com   103 Pickwick Dr

581 (B) If any part of the Property included in the sale fails before settlement, Seller will:
582     1. Repair or replace that part of the Property before settlement, OR
583     2. Provide prompt written notice to Buyer of Seller's decision to:
584         a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender,
585             if any, OR
586         b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed
587             part of the Property.
588     3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, or if Seller
589         fails to notify Buyer of Seller's choice, Buyer will notify Seller in writing within _____5_____ DAYS or before Settlement Date,
590         whichever is earlier, that Buyer will:
591         a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement. OR
592         b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
593             Paragraph 26 of this Agreement.
594         If Buyer fails to respond within the time stated in Paragraph 18(B)(3) or fails to terminate this Agreement by written notice
595         to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.
596 (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not
597     replaced prior to settlement, Buyer will:
598     1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
599     2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
600         Paragraph 26 of this Agreement.
601 **19. HOME WARRANTIES (1-10)**
602     At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller under-
603     stand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any pre-
604     existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or certifi-
605     cations that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends a home
606     warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.
607 **20. RECORDING (9-05)**
608     This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer
609     causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.
610 **21. ASSIGNMENT (1-10)**
611     This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable,
612     on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless oth-
613     erwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.
614 **22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**
615 (A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the
616     laws of the Commonwealth of Pennsylvania.
617 (B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either
618     party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.
619 **23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)**
620     The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property
621     Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S.
622     real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons pur-
623     chasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required
624     to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. tax-
625     ation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/Buyer
626     you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to withhold,
627     you may be held liable for the tax.
628 **24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**
629     The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing
630     for community notification of the presence of certain convicted sex offenders. Buyers are encouraged to contact the municipal
631     police department or the Pennsylvania State Police for information relating to the presence of sex offenders near a particular prop-
632     erty, or to check the information on the Pennsylvania State Police Web site at www.pamegamslaw.state.pa.us.
633 **25. REPRESENTATIONS (1-10)**
634 (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their
635     licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this
636     Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations,
637     covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This
638     Agreement will not be altered, amended, changed or modified except in writing executed by the parties.
639 (B) Unless otherwise stated in this Agreement, Buyer has inspected the Property (including fixtures and any personal property
640     specifically listed herein) before signing this Agreement or has waived the right to do so, and agrees to purchase the Property
641     IN ITS PRESENT CONDITION, subject to inspection contingencies elected in this Agreement. Buyer acknowledges that
642     Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the struc-
643     tural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of con-
644     ditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems con-
645     tained therein.

646 Buyer Initials: ERRT  bSRT KSRT ERRT    ASR Page 11 of 13    Seller Initials: ____

DocuSign Envelope ID: A8D55AF4-47CE-4B65-8716-960BA6AA2280

647     (C) Any repairs required by this Agreement will be completed in a workmanlike manner.

648     (D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

649 **26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (1-18)**

650     (A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all
651     deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID.
652     Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.

653     (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
654     determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:

655       1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written
656       agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

657       2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing
658       Broker how to distribute some or all of the deposit monies.

659       3. According to the terms of a final order of court.

660       4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
661       deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))

662     (C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____ days (180 if not
663     specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the
664     Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written
665     request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the sub-
666     ject of litigation or mediation. If Broker has received verifiable written notice of litigation or mediation prior to the receipt of Buyer's
667     request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between
668     Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation or mediation for any portion of the deposit
669     monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit
670     monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their
671     legal rights to pursue litigation even after a distribution is made.

672     (D) Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania
673     law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit
674     monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.

675     (E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:

676       1. Fail to make any additional payments as specified in Paragraph 2, OR
677       2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's
678       legal or financial status, OR
679       3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

680     (F) Unless otherwise checked in Paragraph 26(G), Seller may elect to retain those sums paid by Buyer, including deposit monies:

681       1. On account of purchase price, OR
682       2. As monies to be applied to Seller's damages, OR
683       3. As liquidated damages for such default.

684     (G) ☒ SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED
685     DAMAGES.

686     (H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer
687     and Seller are released from further liability or obligation and this Agreement is VOID.

688     (I) Brokers and licensees are not responsible for unpaid deposits.

689 **27. MEDIATION (1-10)**

690 Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies,
691 to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute
692 Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation sys-
693 tem offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided
694 equally among the parties and will be paid before the mediation conference. This mediation process must be concluded before any party
695 to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to stop any
696 statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding. Any agree-
697 ment to mediate disputes or claims arising from this Agreement will survive settlement.

698 **28. RELEASE (9-05)**

699 Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFI-
700 CER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through
701 them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the
702 consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-
703 based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system
704 or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the
705 terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pur-
706 sue any remedies that may be available under law or equity. This release will survive settlement.

707 **29. REAL ESTATE RECOVERY FUND (1-18)**

708 A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real
709 estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been
710 unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-
711 3658.

712 Buyer Initials: ERRT  bSRT /KSRT  E RRT     ASR Page 12 of 13     Seller Initials:

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

103 Pickwick Dr

DocuSign Envelope ID: A8D55AF4-47CE-4B65-8716-960BA6AA2280

713 **30. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**
714     (A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s)
715         and Closing Disclosure(s) upon receipt.
716     (B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be
717         satisfied by communication/delivery to the Broker for Buyer, if any, except for documents required to be delivered pursuant to
718         Paragraph 16. If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made
719         directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows
720         communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If
721         there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller,
722         unless otherwise agreed to by the parties.
723 **31. HEADINGS (4-14)**
724     The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the
725     sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.
726 **32. SPECIAL CLAUSES (1-10)**
727     (A) The following are attached to and made part of this Agreement if checked:
728         ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
729         ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
730         ☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
731         ☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
732         ☐ Appraisal Contingency Addendum (PAR Form ACA)
733         ☐ Short Sale Addendum (PAR Form SHS)
734         ☐ MONEY BACK GUARANTEE RIDER
735         ☐ SEE ADDENDUM 1 - PROVISIONS Attached here to and made a part here of
736         ☐
737     (B) Additional Terms:
738
739
740
741
742
743 Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

744 This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts
745 together shall constitute one and the same Agreement of the Parties.

746 **NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are advised
747 to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

748 Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures
749 of all parties, constitutes acceptance by the parties.

750 _____ Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

751 _____ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

752 _____ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money)
753 before signing this Agreement.

754 _____ Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has
755 received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

756 **BUYER** _Ernest Robert Rossi, Trustee Ernest Robert Rossi Trustee_ DATE 9/11/2018 1:47:42 PM PDT
Ernest Robert Rossi & Karen S Rossi

757 **BUYER** _Karen S Rossi, Trustee Karen S Rossi Trustee_ DATE 9/11/2018 1:48:00 PM PDT
Asset Protection Trust

758 **BUYER** _____ DATE _____

759 Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
760 Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

761 **SELLER** _Natalie Cardiello_ DATE 9/18/18
Natalie Cardiello as Trustee

762 **SELLER** _____ DATE _____

763 **SELLER** _____ DATE _____

DocuSign Envelope ID: 0F9D1070-DFBB-4E05-8589-91C03B8DF192

<div align="center">

**"AS IS, WHERE IS"**
**ADDENDUM TO**
<u>**AGREEMENT OF SALE**</u>

</div>

**SELLER:**   Natalie Lutz Cardiello, Trustee for the Bankruptcy Estate of:

<div align="center">

Martha Peelor

</div>

<div align="center">

and

</div>

**BUYER:** _____ Ernest Robert Rossi & Karen S Rossi Asset Protection Trust _____

**PROPERTY:** _____ 103 Pickwick Drive Bethel Park, PA 15102 _____ ("Property")

**THIS ADDENDUM is attached to and made a part of the agreement of sale between the above referenced parties dated** _____ 09/06/2018 _____ **("Agreement").**

Buyer(s) is/are purchasing the Property in "as is, where is," condition, without any warranties of any kind, including warranties of marketability, habitability, merchantability or fitness for a particular use. The Property will be conveyed by "SPECIAL WARRANTY" deed. No evidence of title, title insurance policy or abstract of title will be provided by the Seller.

Buyer(s) will HOLD HARMLESS Seller, the real estate companies and their respective agents as to the condition of the Property and its systems. Buyer(s) acknowledge(s) that he/she/they have thoroughly inspected and examined this Property and are not relying on any statements of the Seller or her representatives as to the condition of the Property including any latent defects. Seller has no obligation to make any repairs or renovations to the Property as a requirement of lender and/or the local building inspector or the failure of any system prior to closing. Buyer(s) is/are responsible for any and all costs associated with a required land and/or building inspection and/or dye test, for turning on and off utilities, and for paying the utility charges if required for any such inspection or dye test.

Buyer shall deposit _____ Four Thousand Dollars ($4,000) _____ with the Seller as hand money, payable to "**Natalie Lutz Cardiello, Trustee**" at 107 Huron Drive, Carnegie, PA 15106. Except as set forth below, hand money is non-refundable and will be used by the Seller to pay for advertising and other costs associated with the sale of the Property. Hand money shall be returned to Buyer only in the event that a higher or better offer is made and the Property sold to someone other than Buyer for an amount which is greater than or equal to the purchase price set forth in this Agreement.

Buyer shall have ten (10) days from the date of short sale approval to perform any inspections or to complete any other due diligence he/she/they wish to perform in connection with the purchase of the Property during which period Buyer may request a refund of the hand money. Once the ten (10) day period has elapsed, the hand money is non-refundable, except as otherwise stated herein. It is understood that this entire Agreement is subject to approval by the United States Bankruptcy Court for the Western District of Pennsylvania. Any offer to purchase accepted by the Seller will only commit the Seller to file a motion with the Bankruptcy Court for approval of the sale to the prospective Buyer, at which time of hearing in open court the Bankruptcy Court will solicit high and/or better offers. However, should unforeseen circumstances arise and the Seller determines not to proceed with the sale, the Seller may

DocuSign Envelope ID: 0F9D1070-DFBB-4E05-8589-91C03B8DF192

withdraw such motion and return Buyer's hand money, if appropriate, in accordance with the preceding paragraph.

Closing shall occur on or before ten days from the date the Order of Sale becomes final and nonappealable, or at such other time as may be acceptable to the Seller's counsel, with all such payments to be via certified check, cashier's check, or such other forms of assured and guaranteed payment as may be acceptable to the Seller's counsel.

By signing this Addendum, Buyer certifies that he/she/they have no relationship with the Debtor(s)/current owner(s) of the Property and, if Buyer is corporation, partnership, or other legal entity, that no officer, director, member, shareholder, partner, etc. has a relationship with the Debtor(s)/current owner(s) of the Property.

This Addendum shall be construed under Pennsylvania law.  Any disputes arising hereunder shall be settled by the United States Bankruptcy Court for the Western District of Pennsylvania.

The terms of this Addendum shall control and any language in the main body of the Agreement which is inconsistent or conflicts with the language of this Addendum shall be null and void.

| | | | |
|---|---|---|---|
| *vera purcell* | 9/21/2018 | *Ernest Robert Rossi, Trustee* | 9/21/2018 12:43:37 PM PDT |
| Witness | Date | Buyer | Date |
| *vera purcell* | 9/21/2018 | *Karen S Rossi, Trustee* | 9/21/2018 12:39:35 PM PDT |
| Witness | Date | Buyer | Date |
| | | *Natalie Lutz Cardiello* | 9/24/18 |
| Witness | Date | Bankruptcy Trustee, Seller | Date |

DocuSign Envelope ID: E4750B6E-2A77-46B1-BC8C-FEE1C66BBA87



## Purchase & Sale of Real Property Contract Addendum

### 103 Pickwick Drive Bethel Park, PA 15102
### Property Address

1   Buyer acknowledges that this property is subject to Short Sale Lender Approval & Bankruptcy Court Approval.

2   The Bankruptcy Estate Fee is to be paid by the Sellers proceeds or through a buyer's premium and made payable to the Bankruptcy Estate.

3   Buyer acknowledges that the property is sold "AS IS". Absolutely no repairs will be authorized. The Seller is unable to remove any debris or personal property left on the Property and does not warrant that there will be any appliances or other personal property left on the Property.

4   Seller shall make no concessions and can pay no closing costs for the buyer.

5   Escrow will be opened with:

| | |
|---|---|
| COMPANY NAME: | Service Link |
| ADDRESS: | 1400 Cherrington Pkwy |
| CITY, STAT, ZIP: | Corapolis, PA 15108 |
| PHONE: | (866) 467-0647 |
| EMAIL: | MelissaS.Columbus@svclnk.com |

6   Earnest money deposit will be no less than 1 % of the purchase price. Upon acceptance, earnest money will be deposited with the Escrow/Title Company in the form of a cashier's check or bank wire within 48 hours of acceptance.

7   The Seller in this transaction is exempt from providing the Home Owner's Association documents, as this is a court-ordered sale. Buyer will be solely responsible for any application, transfer, capital contributions and initial membership fees charged by the Association. Buyer is aware it may take up to 10 days to receive a response from the Federal Bankruptcy Trustee (Seller).

8   Buyer may cancel the Residential Purchase Agreement for any reason without penalty any time after 120 days from Seller's acceptance date, if Short Sale Investor Approval has not been received.

9   Upon Investor approval of sale, buyer shall be prepared to close escrow within 45 days. Upon Bankruptcy Court Approval of sale, buyer agrees to close escrow per Federal Bankruptcy Trustee instructions.

10   Any issues regarding permitting will be the responsibility of the buyer and will not be part of the contract and not a requirement of closing.

11   Buyer shall be responsible for connecting utilities to perform inspections requested as part of the due diligence period. Buyer shall use this period to satisfy themselves of all mechanical, structural, functional related concerns regarding the property.  Buyer shall have the same amount of time to obtain, review, & satisfy themselves of any association rules, regulations & fees, if applicable. Buyer shall release inspection contingency within 5 days of Short Sale Lender Approval, if applicable.  Seller will not pay any upfront expenses related to plowing the road for access to the property.  Should the Buyer require the septic system be pumped and inspected this will be done at the buyer's expense.

DocuSign Envelope ID: E4750B6E-2A77-46B1-BC8C-FEE1C66BBA87

12  Buyer acknowledges that the seller may not have access to garage remotes, mailbox keys or access related keys to property. Seller will tender any items available at the close of escrow but shall not be liable to provide items not in his/her possession.

13  Buyer shall immediately disclose if he/she is related to the debtor. Buyer understands that most investors require an Arm's Length Disclosure, and some investors will not allow a family relation to purchase a property in which a relateddebtor may have interest.

14  Should buyer be representing self as an agent, buyer understands that some investors will not allow Buyer(s) to receive any funds or commissions from the sale of the property.

15  Offers in the name of a corporation, trust, LLC or partnership will need to show proof of all owners and shall provide a copy of the articles of organization to include authority of signer to sign on behalf of the entity.

16  Seller will not pay for Appraisal and/or Home Warranty.


Buyer understands and agrees that this addendum shall take precedence where any terms conflict with the original Residential Purchase Agreement.


DATED this 31st day of August, 2018

**Trustee**

Signature

Print Name


**Buyer**

Signature    Ernest Robert Rossi, Trustee

Print Name

Ernest Robert Rossi,
                    Trustee

Title


**Buyer**

Signature    Karen S Rossi, Trustee

Print Name

Karen S. Rossi, Trustee

Title

DocuSign Envelope ID: 35140DA4-6EE5-40D6-BF60-86AF4553C054

**CHANGE IN TERMS ADDENDUM TO AGREEMENT OF SALE** <span style="float:right">CTA</span>
This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

1 **PROPERTY** 103 Pickwick Dr, Bethel Park, PA 15102-1721
2 **SELLER** Natalie Cardiello BK Trustee
3 **BUYER**    Ernest Robert Rossi and Karen S. Rossi Asset Protection Trust

4 **The following terms of the Agreement of Sale are changed as stated below:**
5 **1. REPAIRS**
6    Seller, at Seller's expense, will complete the following repairs no later than _____ days prior to Settlement Date (prior to settle-
7 ment, if not specified), in a workmanlike manner, with all required permits, according to the attached contractor's proposal(s), if
8 any, the terms of which, including the persons and specifications contained therein, shall become part of this Agreement:
9 _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 **2. SELLER ASSIST**
21    Seller Assist is changed to $ _____ , or _____ % of the Purchase price, maximum, toward Buyer's costs as permit-
22 ted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage
23 lender.
24 **3. PURCHASE PRICE**
25    Purchase price is changed from $ 130,100.00 to $ 138,800.00 .
26 **4. ACCEPTANCE & SETTLEMENT**
27    (A) Written acceptance of all parties will be on or before: _____
28    (B) Settlement Date is changed from _____ to _____
29 **5. MORTGAGE TERMS**
30    (A) **Mortgage Type** is changed from _____ to _____
31    (B) **Mortgage amount**
32       1. First mortgage amount is changed from $ _____ to $ _____
33       2. Second mortgage amount is changed from $ _____ to $ _____
34    (C) **Mortgage Lender**
35       1. First mortgage lender is changed to _____
36       2. Second mortgage lender is changed to _____
37       3. Buyer will submit a completed, written mortgage application to the identified lender(s), if any, according to the terms of
38       the Mortgage Contingency paragraph of the Agreement of Sale on or before: _____
39    (D) **Loan-To-Value (LTV) ratio** (For conventional loans)
40       First mortgage LTV ratio not to exceed _____ %     Second mortgage LTV ratio not to exceed _____ %
41    (E) **Date for Buyer to deliver documentation** of lender's approval of Buyer's mortgage, whether conditional or outright, is
42    changed from _____ to _____
43 **6. TIME PERIODS**
44    (A) The time period in paragraph _____ , line _____ of Agreement of Sale is changed to _____ .
45    (B) The time period in paragraph _____ , line _____ of the _____ Addendum is changed to _____ .
46 **7. OTHER**
47 Closing to occur within 45 days of execution of this document
48 _____
49 **All other terms and conditions of the Agreement, including all other time periods, remain unchanged and in full force and effect.**

| | | | |
|---|---|---|---|
| 50 **BUYER** *Ernest Robert Rossi, Trustee* | Ernest Robert Rossi, Trustee | **DATE** | 1/22/2019 |
| 51 **BUYER** | | **DATE** | |
| 52 **BUYER** *Karen S. Rossi, Trustee* | Karen S. Rossi, Trustee | **DATE** | 1/22/2019 |
| 53 **SELLER** | Natalie Cardiello BK Trustee | **DATE** | |
| 54 **SELLER** *Natalie Luke Cardiello* | | **DATE** | 01/22/2019 |
| 54 **SELLER** | | **DATE** | |

Pennsylvania Association of Realtors®

<span style="float:right">COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2018
rev. 1/18; rel. 4/18</span>